Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALI HANSRAJ,<br><br>    Plaintiff,<br><br>v.<br><br>CORNERSTONE ONDEMAND, INC., PHIL SAUNDERS, ADAM MILLER, RICHARD HADDRILL, NANCY ALTOBELLO, FELICIA ALVARO, DEAN CARTER, ROBERT CAVANAUGH, JOE OSNOSS, STEFFAN TOMLINSON, and SARA MARTINEZ TUCKER,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Ali Hansraj ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Cornerstone OnDemand, Inc. ("Cornerstone" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Cornerstone by Sunshine Software Holdings, Inc. ("Parent") and Sunshine Software Merger Sub, Inc. ("Merger Sub"). Parent and Merger Sub are owned by funds managed by affiliates of Clearlake Capital Group, L.P. ("Clearlake").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Cornerstone common stock.

7. Defendant Cornerstone, together with its subsidiaries, provides learning and people development solutions as software-as-a-service worldwide. The Company is incorporated in Delaware. The Company has offices located in New York, N.Y. The Company's common stock trades on the Nasdaq under the ticker symbol, "CSOD."

8. Defendant Phil Saunders ("Saunders") is Chief Executive Officer and a director of the Company.

9. Defendant Adam Miller ("Miller") is a founder and Co-Chairman of the Board of the Company.

10. Defendant Richard Haddrill ("Haddrill") is Co-Chairman of the Board of the Company.

11. Defendant Nancy Altobello ("Altobello") is a director of the Company.

12. Defendant Felicia Alvaro ("Alvaro") is a director of the Company.

13. Defendant Dean Carter ("Carter") is a director of the Company.

14. Defendant Robert Cavanaugh ("Cavanaugh") is a director of the Company.

15. Defendant Joe Osnoss ("Osnoss") is a director of the Company.

16. Defendant Steffan Tomlinson ("Tomlinson") is a director of the Company.

17. Defendant Sara Martinez Tucker ("Tucker") is a director of the Company.

18. Defendants Saunders, Miller, Haddrill, Altobello, Alvaro, Carter, Cavanaugh, Osnoss, Tomlinson, and Tucker are collectively referred to herein as the "Individual Defendants."

19. Defendants Cornerstone and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

20. On August 5, 2021, Cornerstone announced that it had entered into a definitive merger agreement to be acquired by Clearlake for $57.50 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**Cornerstone OnDemand Enters Definitive Agreement to Be Acquired by Clearlake Capital Group in $5.2 Billion Transaction**

*Cornerstone Stockholders to Receive $57.50 Per Share in Cash*
*Vector Capital to Make Minority Investment at Closing*

August 05, 2021 04:11 PM Eastern Daylight Time

SANTA MONICA, Calif.--(BUSINESS WIRE)--Cornerstone OnDemand, Inc. (NASDAQ: CSOD), a global leader in talent management software, today announced it has entered into a definitive agreement to be acquired by Clearlake Capital Group, L.P. (together with certain of its affiliates, "Clearlake"), a leading private equity firm. Under the terms of the agreement, Clearlake will acquire the outstanding shares of Cornerstone common stock for $57.50 per share in cash. The transaction has an enterprise value of approximately $5.2 billion.

The $57.50 per share purchase price represents a premium of approximately 31% to Cornerstone's unaffected closing stock price on June 1, 2021, the last full trading day prior to Clearlake filing a Schedule 13D in connection with the Company's strategic review process, and a 40% premium to the Company's unaffected LTM VWAP. Upon completion of the transaction, Cornerstone will become a private company with the flexibility and resources to continue to provide market leading, talent management software-as-a-service ("SaaS") solutions. Additionally, Cornerstone will benefit from the operating capabilities, capital support and deep sector expertise of Clearlake and their strong track record with software platform investments.

Phil Saunders, Chief Executive Officer of Cornerstone, said, "Clearlake's investment reflects their confidence in our talented people, the power of our SaaS solutions and our value proposition for our customers. With this transaction, we plan to continue to pursue new software capabilities that advance our customers' efforts to optimize workforce agility, transform skill development, deliver personalized, engaging growth experiences, and align their organizations around a shared definition of success. We're thrilled to welcome Clearlake as a partner that appreciates the impact our SaaS solutions have on the lives of people at work and our customer-centric philosophy as we accelerate our innovation."

"This transaction represents another major milestone in Cornerstone's amazing journey. As a private company with Clearlake as a partner, Cornerstone will be even better positioned to innovate, to capitalize on our market opportunities and to extend our platform," said Adam Miller, Founder and Co-Chairman of the Board. "The added significant strategic flexibility and financial resources will create new opportunities for our employees, provide our clients with more capabilities to empower their people and enable us to help millions more people realize their potential."

Richard Haddrill, Co-Chairman of the Board, said, "Today's announcement is the culmination of a robust strategic review process conducted by the Board over the past several months. This process considered our standalone opportunities and solicited and inbound interest from a significant number of parties, including potential strategic and financial partners. We are very pleased to reach this agreement, which provides our stockholders with compelling, certain cash value and positively reflects the operational and strategic synergies achieved through Cornerstone's prior acquisition of Saba."

"We have long admired Cornerstone's leading talent management SaaS solutions and the Company's mission to help customers modernize the learning and development experience for their employees," said Behdad Eghbali, Co-Founder and Managing Partner at Clearlake. "We believe there is a significant opportunity to strategically position Cornerstone in the market as a leading platform and industry consolidator, and we look forward to partnering with the management team to drive value through both organic growth acceleration and inorganic transformation."

"With a compelling suite of market-leading SaaS solutions, and history of product innovation, we believe Cornerstone is well positioned in the growing and rapidly evolving talent management market," said Prashant Mehrotra, Partner, and Paul Huber, Principal at Clearlake. "We are excited to leverage Clearlake's O.P.S.® framework to help the Company strengthen its strategic growth plans and accelerate the pace of execution."

"We have developed deep admiration and respect for Cornerstone over the years, in particular during our ownership of Saba Software. We are thrilled to support the Company's outstanding management team and employees to extend Cornerstone's leadership as the pre-eminent next-generation talent management software platform," said David Fishman, Managing Director and Head of Private Equity, and Andy Fishman, Managing Director at Vector Capital.

**Timing and Approvals**

The transaction, which was unanimously approved by Cornerstone's Board of Directors, is not subject to a financing condition and is expected to close in the

second half of 2021, subject to customary closing conditions, including the receipt of regulatory approvals and approval by a majority of Cornerstone stockholders. Certain stockholders, including Clearlake, representing 15.65% of the Company's outstanding shares have agreed to vote their shares in favor of the transaction.

Upon the completion of the transaction, Cornerstone will become a privately held company and shares of Cornerstone common stock will no longer be listed on any public market.

*   *   *

**Advisors**

Qatalyst Partners and Centerview Partners LLC are serving as financial advisors to Cornerstone, and Cooley LLP is serving as legal counsel.

Qatalyst, Rothschild & Co., J.P. Morgan, Goldman Sachs, BoA Securities, Barclays, Jefferies and William Blair are acting as financial advisors to Clearlake. Sidley Austin LLP is serving as legal counsel to Clearlake in the connection with the acquisition and debt financing.

J.P. Morgan, BoA Securities, Ares, Golub, Antares, Barclays, Blue Owl, BMO Capital Markets, BNP Paribas, Credit Suisse, Goldman Sachs and Jefferies are providing the debt financing for the transaction.

**About Cornerstone**

Cornerstone powers the future ready workforce, with HR software and solutions designed to unite people, teams, technology and business, and inspire a work environment of growth, agility and success for all. With an AI-powered and skills-forward system designed for the contemporary workforce, we help organizations modernize the learning and development experience, deliver the most relevant content from anywhere, accelerate talent and career mobility, and establish skills as the universal language of growth and success across the business. Cornerstone serves over 6,000 customers and 75M users and is available in 180 countries and 50 languages. https://www.cornerstoneondemand.com/

**About Clearlake**

Clearlake is an investment firm founded in 2006 operating integrated businesses across private equity, credit and other related strategies. With a sector-focused approach, the firm seeks to partner with world-class management teams by providing patient, long-term capital to dynamic businesses that can benefit from Clearlake's operational improvement approach, *O.P.S.*® The firm's core target sectors are technology, industrials and consumer. Clearlake currently has approximately $39 billion of assets under management and its senior investment

principals have led or co-led over 300 investments. The firm has offices in Santa Monica and Dallas. More information is available at https://www.clearlake.com.

**About Vector**

Vector Capital is a San Francisco-based leading global private equity firm focused on transformative investments in technology and technology-enabled businesses. Founded in 1997, Vector oversees approximately $4 billion of capital across its private equity and credit strategies from a variety of investors including university endowments, foundations, and financial institutions. Vector exclusively focuses on investments within the technology sector and has built a successful track record of executing buyouts, carve-outs, recapitalizations, minority, and credit investments. With our disciplined approach to valuation and deep-rooted operational experience, Vector has generated competitive returns and established a successful track record spanning 24 years. More information is available at https://www.vectorcapital.com.

21. On September 10, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22. The Proxy Statement, which recommends that Cornerstone shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Cornerstone's financial projections; (ii) the financial analyses performed by Cornerstone's financial advisors, Qatalyst Partners LP ("Qatalyst") and Centerview Partners LLC ("Centerview"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Company insiders.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; (ii) Opinion of Qatalyst Partners LP; (iii) Opinion of Centerview Partners LLC; (iv) Financial Projections; and (v) Background of the Merger.

24. Unless and until the material misstatements and omissions (referenced below) are

remedied before the October 12, 2021 shareholder vote on the Proposed Transaction, Cornerstone shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Cornerstone's Financial Projections

25. The Proxy Statement omits material information concerning Cornerstone's financial projections.

26. With respect to the Company's projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Total Revenue, (ii) Non-GAAP Operating Income, (iii) Adjusted EBITDA, (iv) Levered Free Cash Flow, and (v) Unlevered Free Cash Flow; (2) Cornerstone's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

28. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not

8

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Qatalyst and Centerview. The valuation methods, underlying assumptions, and key inputs used by Qatalyst and Centerview in rendering their purported fairness opinions must be fairly disclosed to Cornerstone shareholders. The description of the fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses.

31. Without the information described below, Cornerstone shareholders are unable to fully understand the advisors' fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

#### A. *Qatalyst's Analyses*

32. The Proxy Statement fails to disclose the following concerning Qatalyst's

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 15, 2021).

"*Discounted Cash Flow Analysis*": (1) all line items underlying the unlevered free cash flow projections for the Company; (2) the terminal values of the Company; (3) the individual inputs and assumptions underlying the (i) discount rates of 8.0% to 12.0%, and (ii) range of multiples of 14.0x to 23.0x; and (4) the number of fully diluted shares of Cornerstone common stock.

33.     With respect to Qatalyst's "*Selected Transactions Analysis*," the Proxy Statement fails to disclose the closing dates and total values of the transactions.

### B. *Centerview's Analyses*

34.     The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) all line items underlying the unlevered free cash flow projections for the Company; (2) the terminal values of the Company; (3) the individual inputs and assumptions underlying the (i) discount rates of 8.25% to 10.0%, and (ii) range of multiples of 15.0x to 20.0x; and (4) the number of fully diluted shares of Cornerstone common stock.

35.     With respect to Centerview's "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the closing dates and total values of the transactions.

36.     With respect to Centerview's "*Analyst Price Target Analysis*," the Proxy Statement fails to disclose the price targets observed in the analysis and the sources thereof.

37.     With respect to Centerview's "*Precedent Premiums Paid Analysis*," the Proxy Statement fails to disclose the transactions observed in the analysis and the premiums paid therein.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

38.     The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

39.     The Proxy Statement fails to adequately disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers

10

and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

40. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and

misleading Proxy Statement.

45. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned

company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

52. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 15, 2021       Respectfully submitted,

               **HALPER SADEH LLP**

               By: /s/ Daniel Sadeh
               Daniel Sadeh, Esq.
               Zachary Halper, Esq. (to be admitted *pro hac vice*)
               667 Madison Avenue, 5th Floor
               New York, NY 10065
               Telephone: (212) 763-0060
               Facsimile: (646) 776-2600
               Email: sadeh@halpersadeh.com
                   zhalper@halpersadeh.com

*Counsel for Plaintiff*

15